**DISTRICT OF COLUMBIA, Appellant,**

**v.**

**FRATERNAL ORDER OF POLICE, METROPOLITAN POLICE DEPARTMENT LABOR COMMITTEE, Appellee.**

No. 12–CV–85.

District of Columbia Court of Appeals.

Argued Jan. 9, 2013.

Decided Sept. 12, 2013.

Mary L. Wilson, Senior Assistant Attorney General, with whom Irvin B. Nathan, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for appellant.

Paul A. Fenn, with whom Erinn M. Maguire, Baltimore, MD, was on the brief, for appellee.

Before GLICKMAN, BLACKBURNE–RIGSBY, and BECKWITH, Associate Judges.

BLACKBURNE–RIGSBY, Associate Judge:

At issue in this appeal is whether the personal privacy exemption of the District of Columbia Freedom of Information Act ("FOIA" or the "Act")[1] protects from disclosure the names of Metropolitan Police Department ("MPD") employees who submitted questions, comments, or concerns to the Chief of Police through an email account known as "Chief Concerns." The Fraternal Order of Police, Metropolitan Police Department Labor Committee ("FOP") seeks disclosure of the identities of the employees who sent emails to the "Chief Concerns" email account. The District of Columbia disclosed the content of the emails to FOP, but redacted the authors' identifying information. The trial court, in its award of summary judgment to FOP, ordered the District of Columbia to disclose the identities of the senders. On appeal, the District of Columbia asserts that the trial court erred by ordering it to disclose the identifying information because the information is exempt from disclosure under D.C.Code § 2–534(a)(2) (2001), the personal privacy exemption, of FOIA. We agree and we vacate, in part, the judgment of the trial court in so far as it ordered the District of Columbia to disclose the identifying information in the emails at issue. We enter judgment for the District of Columbia, as a matter of law, because the District is entitled to

---

1. FOIA is codified at D.C.Code §§ 2–531 to – 540 (2010 Supp.).

redact the identifying information under the personal privacy exemption of FOIA.

## I. Factual and Procedural Background

"Chief Concerns" is an email account for messages submitted by MPD employees to the Chief of Police through the MPD's internal, employees-only intranet. Chief of Police Cathy L. Lanier created the email account and announced to MPD employees that her office would hold the identities of employees who send email messages to the account in strict confidence, hoping employees would be less reluctant to submit questions, comments, or concerns to her. Lanier informed MPD employees of the "Chief Concerns" account and her pledge of confidentiality during roll call visits throughout the District, in the MPD's internal newsletter, and through her command staff. After Lanier created "Chief Concerns," MPD employees began sending emails to the account.

On June 13, 2008, FOP submitted a FOIA request to the District of Columbia Office of the Chief Technology Officer, seeking copies of all emails sent to or from the "Chief Concerns" email account in the preceding month. On November 14, 2008, having received no response to its FOIA request, FOP filed a complaint in the Superior Court. On June 25, 2009, FOP moved for summary judgment, which the trial court denied. The District of Columbia subsequently began producing emails, albeit with certain redactions, to FOP. The production included emails submitted by employees to the "Chief Concerns" account and MPD's email responses. After repeated hearings before the trial judge, the dispute ultimately narrowed to eleven emails sent by employees to "Chief Concerns" where the District of Columbia produced the content of the emails but redacted the identities of the senders. Each email details a matter of personal concern to the particular author. The topics range from complaints about other employees or the MPD to questions or suggestions about workplace dynamics.

On March 7, 2011, FOP renewed its motion for summary judgment. At a hearing on August 1, 2011, the trial court granted summary judgment to FOP, concluding that the public has an interest in knowing the matters about which police officers in the field are concerned. In a corresponding two-page written order, the trial court ordered the District of Columbia to produce the emails to FOP without redaction. On August 18, 2011, the District of Columbia noted an appeal in this court, and also filed a motion for partial reconsideration in the trial court. Because the District's motion remained pending in the trial court, we dismissed the appeal as having been prematurely filed. On January 27, 2012, the trial court held a hearing and formally denied the District's motion for partial reconsideration. The trial court also denied the District's request for a stay pending appeal. The District of Columbia then noted this timely appeal on January 27, 2012. In addition, the District of Columbia moved for a stay of the trial court's order pending appeal, which we granted.

## II. Discussion

The District of Columbia argues that the trial court improperly granted summary judgment in FOP's favor, contending that the identities of the individuals who sent the eleven emails to the Chief of Police through the "Chief Concerns" account are exempt from disclosure under D.C.Code § 2–534(a)(2). Specifically, the District of Columbia argues that the MPD employees have a privacy interest in keeping their identities from being disclosed because the emails detail matters personal to each particular author and because the employees relied on the government's pledge of confi-

dentiality. The District of Columbia further argues that "[t]he body of the emails already produced by the District, which includes the emails sent to the Chief Concerns account and MPD's responses thereto, provides the requisite understanding of the activities of the government." FOP contends that the MPD employees have no privacy interest and, even if they do, that interest cannot outweigh the public interest in disclosure. In addition, at oral argument, FOP argued for the first time that the public needs the information because the MPD may have responded differently to certain concerns depending on the rank of the employee.

Before addressing the issue before us in this appeal, we begin by setting forth our standard of review. Then, we provide an overview of FOIA and the personal privacy exemption. After setting forth the legal framework, we proceed to the exemption analysis. Ultimately, we conclude that the public interest weighing in favor of disclosure is negligible and does not outweigh the MPD employees' privacy interest.

### A. Standard of Review

■ We review *de novo* the trial court's grant of summary judgment in a FOIA case. *Padou v. District of Columbia,* 29 A.3d 973, 980 (D.C.2011) (citation omitted). "Summary judgment is appropriate only when the record, including pleadings together with affidavits, indicates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (citations, internal quotation

marks, and ellipsis omitted). "In the FOIA context[,] this requires that we ascertain whether the agency has sustained its burden of demonstrating the documents requested are exempt from disclosure under the FOIA." *Multi Ag Media LLC v. Dep't of Agric.,* 380 U.S.App.D.C. 1, 4, 515 F.3d 1224, 1227 (2008) (citations, internal quotation marks, brackets, and ellipsis omitted). This is a question of law. *See Wemhoff v. District of Columbia,* 887 A.2d 1004, 1008 (D.C.2005); *Horowitz v. Peace Corps,* 368 U.S.App.D.C. 192, 199, 428 F.3d 271, 278 (2005).

### B. FOIA and the Personal Privacy Exemption

■ FOIA sets forth a policy favoring full agency disclosure of public records that do not fall squarely within one of the enumerated exemptions. Like its federal counterpart, the Act was designed to " 'pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.' "[2] *Washington Post Co. v. Minority Bus. Opportunity Comm'n,* 560 A.2d 517, 521 (D.C.1989) (quoting *Dep't of the Air Force v. Rose,* 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976)). For that reason, the statutory exemptions "are to be narrowly construed, with ambiguities resolved in favor of disclosure," and the burden of defending a decision to withhold production of requested records is on the agency. *Id.* (citations omitted). "That burden remains with the agency when it seeks to justify the redaction of identifying information in a particular document as well as when it seeks to withhold an entire document." *U.S. Dep't of State v. Ray,*

---

**2.** "The D.C. FOIA is modeled on the federal Freedom of Information Act, and therefore we look to decisions interpreting like provisions in the federal act when we interpret the meaning of the D.C. FOIA." *District of Columbia v. Fraternal Order of Police Metro. Police Labor Comm.,* 33 A.3d 332, 342 n. 8 (D.C.

2011) (Ruiz, J., concurring) (citation omitted); *see also Padou, supra,* 29 A.3d at 982 ("We are guided by federal FOIA law which we treat as instructive authority with respect to our own FOIA pertaining to similar provisions." (citations, internal quotation marks, brackets, and ellipses omitted)).

502 U.S. 164, 173, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991) (citation omitted). Redaction, however, is expressly authorized by FOIA, D.C.Code § 2–534(b) (2001), which indicates that, like Congress, the Council of the District of Columbia "recognized that the policy of informing the public about the operation of its government can be adequately served in some cases without unnecessarily compromising interests in privacy," *Ray, supra,* 502 U.S. at 174, 112 S.Ct. 541 (footnote omitted).

■■■ D.C.Code § 2–534(a)(2), the personal privacy exemption, is the only exemption at issue in this case. This exemption allows an agency to withhold "[i]nformation of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy." *Id.* The term "unwarranted" requires us to "balance the public interest in disclosure against the privacy interest Congress [and the Council of the District of Columbia] intended the exemption to protect." [3] *Padou, supra,* 29 A.3d at 982 (alteration in original) (citations, internal quotation marks, and some brackets omitted); *see Rose, supra,* 425 U.S. at 372, 96 S.Ct. 1592 ("Congress sought to construct an exemption that would require a balancing of the individual's right of privacy against the preservation of the basic purpose of the Freedom of Information Act 'to open agency action to the light of public scrutiny.'"). Because FOIA demands disclosure unless a privacy interest is implicated, a preliminary question in determining the applicability of D.C.Code § 2–534(a)(2) is whether there is any privacy interest at stake in the information sought. That interest need only be "more than *de minimis*" to trigger application of the balancing test.[4] *Multi Ag Media LLC, supra,* 380 U.S.App.D.C. at 6–7, 515 F.3d at 1229–30; *see also Fed. Labor Relations Auth. v. U.S. Dep't of Veterans Affairs,* 958 F.2d 503, 509 (2d Cir.1992) ("Only where a privacy interest is implicated does the public interest for which the information will serve become relevant and require a balancing of the competing interests." (citation omitted)). Once a more than *de minimis* privacy interest is implicated, the requestor must indicate how disclosing the withheld information would serve the public interest. *News–Press v. U.S. Dep't of Homeland Sec.,* 489 F.3d 1173, 1191 (11th Cir.2007) (citing *U.S. Dep't of Def. v. Fed. Labor Relations Auth.,* 510 U.S. 487, 497, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994)). Then, "the competing interests at stake must be balanced in order to decide whether disclosure is permitted under FOIA." *Associated Press v. U.S. Dep't of Def.,* 554 F.3d 274, 285 (2d Cir.2009) (citations and internal quotation marks omitted).

■■■ The privacy interest in the FOIA balancing analysis "encompasses the individual's control of information concerning his or her person," including names, addresses, and other identifying information. *Padou, supra,* 29 A.3d at 982 (citations, internal quotation marks, and brack-

3. Like the D.C. FOIA, the federal FOIA contains a personal privacy exemption. *See* 5 U.S.C. § 552(b)(6) (2006) (exempting from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy").

4. Finding such an interest does not conclude the inquiry; "it only moves it along to the point where we can address the question whether the public interest in disclosure outweighs the individual privacy concerns." *Multi Ag Media LLC, supra,* 380 U.S.App.D.C. at 7, 515 F.3d at 1230 (citation and internal quotation marks omitted). Indeed, a privacy interest may be more than *de minimis* and yet be insufficient to overcome the public interest in disclosure. *Id.*

ets omitted). Moreover, individuals have a privacy interest in personal information even if it is not of an embarrassing or intimate nature. *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 600, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982). The public interest in the balancing analysis is only "the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *U.S. Dep't of Def. v. Fed. Labor Relations Auth., supra*, 510 U.S. at 497, 114 S.Ct. 1006 (citation, internal quotation marks, and brackets omitted). Ultimately, whether the public interest in disclosure warrants the invasion of personal privacy is determined by the degree to which disclosure would further the purpose of FOIA. *Ray, supra*, 502 U.S. at 177, 112 S.Ct. 541 (citation and internal quotation marks omitted).

### C. Privacy Exemption Analysis

To reiterate, we first consider whether disclosure would create an invasion of privacy at all and, if so, how serious an invasion. In the event we identify a greater than *de minimis* privacy interest threatened by disclosure, we then evaluate the public interest in disclosure. Lastly, we balance the competing interests to determine whether the invasion of privacy is clearly unwarranted. Following this approach, we proceed to the exemption analysis.

### 1. Privacy Interest

 We begin by considering whether the MPD employees have any privacy in-terest in the nondisclosure of their names and identifying information.[5] That interest need only be more than *de minimis* to trigger application of the balancing test. *Multi Ag Media LLC, supra*, 380 U.S.App. D.C. at 6–7, 515 F.3d at 1229–30; *see also Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 191 (2d Cir.2012) ("[T]he bar is low . . . ." (citation omitted)). For the following reasons, we are persuaded that the MPD employees who expressed their personal concerns to the Chief of Police through "Chief Concerns" have a greater than *de minimis* privacy interest in keeping their identities from being disclosed.

The redacted documents at issue in this case are eleven emails. The emails, though work-related, detail matters personal to the particular MPD employees. For example, in one email, an author expresses concern about once again being moved to a different squad, "not because of production but due to lack of man power in another unit." The author expresses frustration about losing "yet another" assignment, and "not fully understand[ing] the inner works [sic] of management." The author adds that the author is "here" to "keep the streets safe while still hav[ing] fun doing it." In another email, an author complains of being "menace[d]" by another employee. Similarly, in another email, an author expresses concern about potentially releasing "private information," specifically personal cellphone numbers, to arrestees by completing an administrative form. In yet another email, an author shares news of an outreach program of which the author recently became aware and recommends that the MPD take

---

5. As a preliminary matter, we reject FOP's contention that the MPD employees who sent the emails have no privacy interest because, in light of the District of Columbia's policy for government email accounts which provides that the District's email system is public, they have no reasonable expectation of privacy. FOP cites no case law or other authority and also ignores an important qualification in the policy that emails are subject to FOIA requests *unless* otherwise protected by law. Thus, we are not persuaded that the District's email policy eliminates any possible privacy interest.

part in the program, explaining, "[i]t was a similar program that dedicated me to the field of law enforcement over twenty years ago." We think it plain that such information is personal in nature. Furthermore, although disclosure of the contents of the emails constitutes only a *de minimis* privacy invasion when the identities are redacted, the privacy interest that would be compromised by linking the personal information to particular, named individuals is greater than *de minimis*. *See Ray, supra,* 502 U.S. at 176, 112 S.Ct. 541 (explaining that disclosure of personal information from interviews is only a *de minimis* invasion of privacy when the identities of the interviewees are redacted, but when the identities are disclosed and the personal information is linked to particular interviewees the invasion of privacy is greater than *de minimis* (citation omitted)).

■ In addition, in assessing the significance of the privacy interest at stake, we cannot overlook the fact that these employees relied on the government's pledge of confidentiality.[6] To be sure, the employees' privacy interest was heightened by the government's pledge of confidentiality. "Other things being equal, release of [personal] information provided under a pledge of confidentiality involves a greater invasion of privacy than release of information provided without such a pledge." *Washington Post Co. v. U.S. Dep't of Health and Human Servs.,* 223 U.S.App.D.C. 139, 150, 690 F.2d 252, 263 (1982). "On the other hand, to allow the government to make documents exempt by the simple means of promising confidentiality would subvert FOIA's disclosure mandate." *Id.* Like the D.C. Circuit, we conclude that a government pledge of confidentiality, made in good faith and consistently honored, should be given weight on the privacy side of the scale.[7] *Id.* (citation omitted). Here, there have been no allegations of bad faith or a lack of consistency in applying the confidentiality rule. Accordingly, we think the privacy interest at stake is heightened by the pledge of confidentiality.

By concluding that the MPD employees have a cognizable privacy interest in the nondisclosure of their names and identifying information, we do not suggest that the government may use this privacy interest to maintain a "veil of administrative secrecy." *Washington Post Co., supra,* 560 A.2d at 521. The recognition of this privacy interest means *only* that the FOIA requester will have to show how release of the names and identifying information will

6. It bears emphasis that a pledge of confidentiality does not affect whether the underlying information is in fact "information of a personal nature." Only when the information is "of a personal nature" is a government pledge of confidentiality a relevant consideration. Here, as already explained, the underlying information is personal in nature.

7. Most courts consider a pledge of confidentiality to be a factor in the balancing process. *See, e.g., Ray, supra,* 502 U.S. at 177, 112 S.Ct. 541 ("[T]he Court of Appeals gave insufficient weight to the fact that the interviews had been conducted pursuant to an assurance of confidentiality."); *Providence Journal Co. v. F.B.I.,* 602 F.2d 1010, 1014 (1st Cir.1979) (explaining that the manner in which information is obtained may be as important a factor as the contents of the information itself in determining whether such information is exempt from disclosure); *Lee Pharm. v. Kreps,* 577 F.2d 610, 616 n. 7 (9th Cir.1978) ("[T]he fact that a promise of confidentiality attaches for all practical purposes to each application is a significant factor ...." (citations omitted)); *Ditlow v. Shultz,* 170 U.S.App.D.C. 352, 358, 517 F.2d 166, 172 (1975) (explaining that, in weighing the privacy interest and public interest, the absence of a governmental assurance of confidentiality is a factor in the balancing of interests); *Robinson v. Merritt,* 180 W.Va. 26, 375 S.E.2d 204, 208 (1988) (explaining that it is a relevant factor "whether the information was given with an expectation of confidentiality").

further the public interest, and does not give the government license to keep such information hidden from the public eye.

## 2. Public Interest

 Having concluded that the MPD employees have a cognizable privacy interest in the nondisclosure of their names and other identifying information, we turn to the question of whether the public has an interest in disclosure. The trial court properly recognized that the public has a cognizable interest under FOIA in knowing the matters about which police officers in the field are concerned. We are persuaded, however, that this public interest has been adequately served by disclosure of the content of the emails with only the identities of the authors redacted. The unredacted portions of the documents that have already been released inform the public of the substance and content of the individual officers' concerns. Disclosure of the redacted identifying information, meanwhile, would not shed any additional light on the government's conduct.

FOP argues that release of the names and identifying information will further the public interest by revealing possible government misconduct. Specifically, for the first time at oral argument, FOP suggested that the MPD *may* have responded differently to certain concerns depending on the rank of the employee. Without that underlying assumption, knowledge of the employees' identities would not serve the public interest because it would shed no additional light on "what the[ ] government is up to." *Ray, supra,* 502 U.S. at 177, 112 S.Ct. 541. FOP, however, offers nothing more than bare suspicion. Indeed, FOP does not point to anything in the record to support its suspicion of disparate treatment. Nor does our review of the record reveal anything to suggest that any alleged government impropriety might have occurred. The speculative nature of FOP's asserted hypothetical public interest is simply insufficient for us to give it weight as a public interest.[8] *Ray, supra,* 502 U.S. at 179, 112 S.Ct. 541 ("If a totally unsupported suggestion ... justified disclosure of private materials, Government agencies would have no defense against requests for production of private information."); *see also Nat'l Archives and Records Admin. v. Favish,* 541 U.S. 157, 174, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004) ("[T]here is a presumption of legitimacy accorded to the government's official conduct." (citing *Ray, supra,* 502 U.S. at 178–79, 112 S.Ct. 541)).[9]

## 3. Balancing

 We weigh the privacy interest of the MPD employees in the nondisclo-

---

**8.** In the context of addressing whether disclosure of redacted names and identifying information is warranted where the documents themselves adequately serve the public interest, the Supreme Court has explained that a requestor must show how "the addition of the redacted identifying information" would "shed any *additional* light on the Government's conduct." *Ray, supra,* 502 U.S. at 178, 112 S.Ct. 541 (emphasis added). In *Ray,* because the requestor offered nothing more than "mere speculation about hypothetical public benefits," the Court held that the proposed invasion was "clearly unwarranted." *Id.* Given the absence of any showing at all, the Court declined to delineate "[w]hat sort of evidence of official misconduct might be sufficient to identify a genuine public interest in

disclosure." *Id.* For the same reason, we too decline to do so except to say that, at the least, a requestor must offer more than a bare suspicion in order for there to exist a counterweight for the court to balance against a cognizable privacy interest in the requested records.

**9.** FOP also argues that "the production of the unredacted documents serves the public interest by preventing the dangerous precedent of an appointed executive official circumventing the D.C. FOIA by simply unilaterally designating information contained in emails as outside the scope of FOIA." We are not persuaded by this argument. First, under FOIA, the only relevant public interest is the extent to which disclosure of the information sought

sure of their names and other identifying information against the FOIA-related public interest in disclosure. Where the public interest favoring disclosure is no more than minimal, a lesser privacy interest suffices to outweigh it. *See U.S. Dep't of Def. v. Fed. Labor Relations Auth., supra,* 510 U.S. at 500, 114 S.Ct. 1006 ("Because a very slight privacy interest would suffice to outweigh the relevant public interest, we need not be exact in our quantification of the privacy interest. It is enough for present purposes to observe that the employees' interest in nondisclosure is not insubstantial."). Here, there is a measurable privacy interest that is threatened by disclosure. In contrast, in light of the disclosures already made by the District, there is no relevant, non-speculative public interest to be weighed against that threatened invasion. Therefore, *any* invasion of privacy threatened by disclosure is "clearly unwarranted."

### III. Conclusion

For the foregoing reasons, we conclude that FOIA does not require the District of Columbia to disclose the identities of the email authors. Accordingly, we vacate, in part, the judgment of the trial court in so far as it ordered the District of Columbia to disclose the identifying information in the emails at issue and we enter judgment for the District of Columbia, as a matter of law, because the District is entitled to redact the identifying information under the personal privacy exemption of FOIA.

*So ordered.*

would shed light on "what the[ ] government is up to." *Ray, supra,* 502 U.S. at 177, 112 S.Ct. 541. Second, as already explained, the government cannot subvert FOIA's disclosure mandate by the simple means of promising

confidentiality. Indeed, although a pledge of confidentiality may heighten the privacy interest at stake in a given case, the privacy interest may nonetheless be insufficient to outweigh the public interest in disclosure.